```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
LEVAR CHUNG,                                      :
                                                  :
                    Petitioner,                   :          **MEMORANDUM AND ORDER**
                                                  :
         -against-                                :          03-CV-1913
                                                  :          (DLI)
GARY FILION, Superintendent of                    :
Coxsackie Correctional Facilities,                :
                                                  :
                    Respondent.                   :
-------------------------------------------------------x
```

**DORA L. IRIZARRY, U.S. District Judge:**

Levar Chung ("Chung" or "petitioner") petitions this court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. On February 10, 1999, after a trial by jury in New York State Supreme Court, Queens County, petitioner was acquitted of intentional murder, under N.Y. Penal Law § 125.25(1), but convicted of depraved indifference murder under N.Y. Penal Law § 125.25(2); criminal possession of a weapon in the fourth degree, N.Y. Penal Law § 265.01[4]); and tampering with physical evidence, N.Y. Penal Law § 215.40. The Appellate Division of the New York State Supreme Court, Second Department, affirmed the judgment of conviction on the merits, *see People v. Chung*, 287 A.D.2d 575 (2001), and leave to the New York Court of Appeals was denied. *People v. Chung*, 97 N.Y.2d 702 (2002).

Petitioner seeks a writ of habeas corpus on the grounds that (1) the evidence presented at trial was legally insufficient to support his conviction, (2) the trial court failed to suppress his statements to the police, and (3) his trial counsel was ineffective. Respondent, Gary Filion, contends that petitioner failed to exhaust his state remedies, pursuant to 28 U.S.C. § 2254. Although petitioner submitted his Appellate Division briefs to the New York Court of Appeals, respondent contends that petitioner identified only the suppression issue as a ground for appeal in his letter application for

leave to appeal. For the reasons set forth below, the petition is denied.

## Procedural History

On February 10, 1999, the jury found petitioner guilty of depraved indifference murder, but acquitted him of intentional murder. Petitioner timely appealed to the Appellate Division, Second Department arguing that (1) his conviction failed to evince a depraved indifference to human life, (2) he was denied effective assistance of trial counsel, (3) the trial court improperly denied the motion to suppress his statements, and (4) his sentence was excessive. The Appellate Division, Second Department, affirmed his conviction. *People v. Chung*, 731 N.Y.S.2d at 494.

On November 12, 2001, petitioner filed an application for leave to appeal with the New York State Court of Appeals. Although his letter indicated that he was enclosing a copy of his appellate brief, petitioner did not request a review of the claims asserted therein. Instead, petitioner filed a second letter, on December 5, 2001, arguing only that the trial court improperly denied his suppression motion. The New York Court of Appeals denied the application for leave on January 22, 2002.

## Background

*The Stabbing*

On August 19, 1997, Omar Howell ("Howell") and a group of teenagers including the Petitioner, confronted Keith Myers ("Myers" or "victim"), a sixteen-year-old known to them from the neighborhood. (Bethea Tr. 728-29; 775–777.)[1] Howell, the group's apparent leader, confronted

---

[1] Page references preceded by "Tr." refer to the transcript of the trial. The trial transcript includes two sets of pages numbered 701–753. One set relates, in relevant part, to the testimony of Nicholas Devastey while the second set relates to the testimony of David Bethea. With respect to these pages, citations to the record are preceded by the names of the relevant witnesses, e.g., "Bethea Tr." for the

2

Myers, stating "remember you threw that egg at me" and punched Myers in the face. (Bethea Tr. 730.) Myers ran to the nearby yard of a friend, Nicholas Devastey ("Devastey"). (Tr. 695; Bethea Tr. 730.) Howell, petitioner, and the other teenagers followed Myers to Devastey's home and began taunting Myers. (Tr. 697–8, Devastey Tr. 715–716; Devastey Tr. 735–37; 794–95.)

Myers remained in Devastey's house for about 30 minutes until the group of teenagers left, and Devastey drove Myers home. ( Devastey Tr. 700–01; 703–05.) Myers told his mother what had happened and she called the police. When they arrived, they canvassed the area and left. (Tr. 570; 1225.) Meanwhile, Howell had procured three to four kitchen knives and, at some point, distributed them to the others in the group including petitioner. (Bethea Tr. 738–739.)

A short time later, Howell and the group of teenagers saw Myers outside of his home and walked toward him. (Tr. 913–14; 1146.) Myers' mother and eleven-year-old sister, Jennifer Myers, saw the group of teenagers approaching and called 911 for the second time that day. (*Id*. at 1233.)

Myers and Jennifer waited outside of their home for the police to arrive. As the group of teenagers neared, Jennifer saw that Howell and petitioner each had a knife and she and Myers went back inside the house. (*Id*. at 1449–1453.) Myers' mother called 911 a third time— this time to tell the police that there were teenagers outside of her house, who were possibly armed and wanted to attack her son. (*Id*. at 1234).

At this point, Howell and the group of teenagers reached Myers' house, and Howell and petitioner opened the front gate and entered the yard. (Bethea Tr. 742; 1449–50.) Myers's mother ran out of the house screaming at the teenagers that the police were coming and that they should get

pages relating to David Bethea's testimony and "Devastey Tr." for the pages relating to the testimony of Nicholas Devastey.

off her property. (Tr. 1234–35.) Myers went outside to help his mother. (*Id*. at 1453–54.) Most of the teenagers ran away, but Howell and petitioner remained in the front yard. (Bethea Tr. 743; Tr. 1455–56.)

Myers confronted Howell and knocked him to the ground. (*Id.* at 743; Tr. 1456.) Petitioner, who was standing behind Myers, punched him in the back and Myers turned around to face petitioner assuming a boxing stance. (Bethea Tr. 743; Tr. 1456.) Petitioner jabbed at Myers with a knife and stabbed him in the left side of his chest. (Bethea Tr. 744–45; Tr. 1458.) Immediately after stabbing Myers, petitioner ran away. (Tr. 921.)

When Mrs. Myers returned from chasing the other teenagers away, she saw her son clutching the side of his chest. She embraced him in an effort to hold him upright, but both of them fell to the ground. (*Id.* at 1236.) She tried to stem the bleeding with a shirt, but by the time the police arrived, Myers was dead. (*Id.* at 1236–37.)

*The Statements*

After petitioner was arrested, he was transported to the precinct and advised of his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). (H'rg 7–9, 31.)[2] Petitioner orally indicated that he understood each of his rights and signed his name on a police form listing the *Miranda* rights. (*Id.* at 9.) Petitioner orally recounted the events leading up to the stabbing. A detective memorialized his statement, and petitioner signed it. (Hr'g Tr. 10–13.) After a hearing on petitioner's motion to suppress, the trial court denied petitioner's motion and petitioner's statement was admitted into evidence at trial.

---

[2] Page references preceded by "Hr'g Tr." refer to the minutes of the suppression hearing.

Petitioner claims that, at the precinct, the police purposely isolated him from his mother "with the implied purpose of obtaining a confession from Petitioner." (Pet. ¶ 28.) Therefore, Petitioner argues, his statements should have been suppressed.

**Exhaustion**

"Prior to bringing a petition for habeas corpus pursuant to 28 U.S.C. § 2254, petitioner must exhaust the remedies available in state court or demonstrate that 'there is an absence of available State corrective process [or] [that] circumstances exist that render such process ineffective to protect the rights of the applicant.'" *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 808 (2d Cir. 2000) (*quoting* 28 U.S.C. § 2254(b)(1)) (alterations in original). "To have exhausted claims in state court, petitioner must have 'fairly presented' each federal claim to the highest state court," *Id.* (*quoting Picard v. Connor*, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971)), and thereby have provided the state court with a "fair opportunity to act." *Galdamez v. Keane*, 394 F.3d 68, 73 (2d Cir. 2005).

"[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process. A complete round requires that the petitioner must present[ ] his [or her] claim to the highest court of the state." *Id.* at 73. (internal quotations and citations omitted) (alterations in original).

Although petitioner presented several claims on appeal to the Appellate Division, Second Department, not all of these claims were presented to the New York Court of Appeals. In his leave application, dated November 12, 2001, petitioner informed the court that he was enclosing his appellate brief and would "prepare a follow-up letter to the Judge of the Court of Appeals who is assigned to review the Leave Application." In his December 5, 2001 follow-up letter to the Hon.

5

Carmen Beauchamp Ciparick, petitioner noted that "[o]n appeal, appellant raised several points, including the claim that he was denied effective assistance of trial counsel and that the evidence was insufficient" to support a conviction, but then proceeded to argue only that the trial court improperly denied suppression. "Arguing a single claim at length and making only passing reference to possible other claims to be found in the attached briefs does not fairly apprise the state court of those remaining claims." *Jordan v. Lefevre*, 206 F.3d 196, 198 (2d Cir. 2000) (*citing Grey v. Hoke*, 933 F.2d 933 F.2d 117, 120 (2d Cir. 1991)). Petitioner's letters plainly demonstrate that the New York State Court of Appeals did not have a fair opportunity to consider his claims that there was insufficient evidence to support his conviction and that his trial counsel was ineffective. Petitioner, therefore, deprived the Court of the opportunity to correct the asserted constitutional defects in petitioner's conviction. *See Picard*, 404 U.S. at 276.

"When a prisoner has deprived the state courts of such an opportunity, he has procedurally defaulted his claims." *Galdamez v. Keane*, 394 F.3d 68, 73 (2d Cir. 2005) (*quoting O'Sullivan v. Boerckel*, 526 U.S. 838, 854 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999)). Unless petitioner can establish that either (1) there was cause for the default and prejudice from the failure to raise the claims, or (2) that a failure to consider the claims would result in a fundamental miscarriage of justice, his claims will be procedurally barred. *Fama*, 235 F.3d at 809 (*citing Coleman v. Thompson*, 501 U.S. 722, 749–50, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991)).

Here the petitioner does not offer or assert a cause for his failure to raise his legal insufficiency and ineffective assistance of counsel claims to the New York Court of Appeals. Nor does petitioner claim that he is actually innocent. *Cf. Bousley v. United States*, 523 U.S. 614, 623 (1998) (defining actual innocence as factual innocence and "not mere legal insufficiency");

*Disimone v. Phillips*, 2006 WL 2422777, at *7 (2d Cir. August 22, 2006) (declining to address a claim of actual innocence *sua sponte*); *see also Doe v. Menefee*, 391 F.3d 147, 160 (2d Cir.2004) (describing these "extraordinary case[s]" as those "in which petitioners claim that they are actually innocent of the crimes for which they were convicted"). Therefore, the merits of petitioner's claims of legal insufficiency and ineffective assistance of counsel will not be addressed by the court since they were not preserved for federal *habeas* purposes and petitioner has shown no cause to excuse the procedural default.[3]

## Petitioner's Suppression Claim

Petitioner's claim that his post-arrest statements to the police should have been suppressed was presented to the Appellate Division, Second Department, which rejected the claim on the merits. *See People v. Chung*, 287 A.D.2d 576. Petitioner's suppression claim is therefore exhausted and may be reviewed by this court. *See Fama*, 235 F.3d at 810.

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant a writ to a state prisoner on a federal constitutional claim only if the state court's adjudication of the claim is (1) "contrary to or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

---

[3] Even if this court were to excuse petitioner's failure to raise a claim of legal insufficiency with respect to his conviction for depraved indifference murder, petitioner would not prevail on this issue. The recent Court of Appeals opinion in *Policano* establishes clearly that the state of the law at the time of petitioner's appeal forecloses a successful appeal claiming insufficient evidence as to his depraved indifference murder conviction. See *Policano v. Herbert*, 7 N.Y.3d 588, 859 N.E.2d 484, 825 N.Y.S.2d 678 (2006).

7

Petitioner claims that he was "intentionally isolated from his mother with the implied purpose of obtaining a confession from him, a 16 year old minor." (Pet. ¶ 22.) The trial court held a hearing after which it denied suppression of petitioner's statements to police. The Appellate Division reviewed the record of the hearing and determined that there was ample evidence to support the trial court's findings. *People v. Chung*, 287 N.Y.S.2d at 494. Under AEDPA deference, this court is required to accept those findings as true unless provided with "clear and convincing evidence to the contrary." 28 U.S.C. §2254(e)(1); *see also*, *Parsad v. Greiner*, 337 F.3d 175, 181 (2d Cir. 2003). Petitioner has provided no such evidence.

Petitioner asserts that the police used deception and trickery to isolate him from his mother when they separated him and his younger brother during questioning and that, had he not been separated from her, she may have invoked his right to an attorney. This assertion, without more, fails to provide *clear and convincing* evidence to rebut the presumption of correctness by the State court. Petitioner has provided absolutely no evidence that he would have invoked his right to counsel had his mother been present in the interrogation room. On this basis, the petition for a writ of habeas corpus is denied.

In any event, based on the totality of the circumstances, the court finds that petitioner's statements were made voluntarily. *See United States v. Bye*, 919 F.2d 6, 9 (2d Cir. 1990) (holding that voluntariness assessment must be based on the totality of the circumstances). Petitioner does not dispute that *Miranda* warnings were timely given nor does he claim that his statements were physically coerced. Accordingly, petitioner's application for a writ of habeas corpus is denied on this ground as well.

## Conclusion

For the reasons stated above, the court finds that petitioner failed to exhaust his state remedies as to his claims of insufficiency of the evidence and ineffective assistance of counsel, and has failed to show good cause justifying excuse of the procedural default. In addition, the court holds that, as to those claims that petitioner properly exhausted, the challenged state court decisions were neither contrary to, nor unreasonable applications of clearly established federal law. Accordingly, the petition for a writ of habeas corpus is dismissed. Further, this court denies a certificate of appealability, because there is no substantial showing of the denial of a constitutional right. *Lozada v. United States*, 107 F.3d 1011, 1016-17 (2d Cir.1997), *abrogated on other grounds by United States v. Perez*, 129 F.3d 255, 259-60 (2d Cir.1997). The Clerk of the Court is directed to close the file maintained in this matter.

DATED:      Brooklyn, New York
                March 7, 2006

_____/s/_____
DORA L. IRIZARRY
United States District Judge